**Rome RUTLEDGE, Appellant,**

v.

**Ruth RUTLEDGE, Appellee.**

**No. 2–85–178–CV.**

Court of Appeals of Texas, Fort Worth.

May 15, 1986.

Crampton, Crampton & Estrada, Holly Crampton, Wichita Falls, for appellant.

Fillmore, Purtle, Spurgers & Briley, Stephen Briley, Wichita Falls, for appellee.

Before BURDOCK, HILL and HUGHES (Retired, Sitting by Assignment), JJ.

## OPINION

HILL, Justice.

Rome Rutledge appeals from the judgment dissolving his marriage to Ruth Rutledge and dividing their community estate. In four points of error, Rome asserts that the trial court erred in not granting him a motion for new trial because of fraudulent misrepresentation made by Ruth at trial, and that the trial court abused its discretion in the division of the community estate by making an unequal division favorable to Ruth.

We affirm, because we find that the trial court did not abuse its discretion in denying Rome's motion for new trial, and because we find that the trial court did not abuse its discretion in the division of the community property.

In point of error number one, Rome urges that the trial court erred in not granting him a new trial because Ruth fraudulently misrepresented to the court the existence and value of the Holliday oil leases awarded to him. He specifically refers to the fact that he learned after the trial that Ruth had been told that if the leases were not pumped within 90 days that they could be lost. Roger Crampton, an attorney and the father of Rome's lawyer, testified at the hearing on the motion for new trial that he had examined the leases in question and that it was his opinion that the leases had all terminated, due to the fact that none of them contained an express cessation of production clause. He testified that he could have reached the same conclusion prior to trial if Rome had inquired.

The evidence at trial showed that Rome was a retired airline pilot who had been successful in oil and gas operations since approximately 1970. Ruth had not previously handled any oil and gas endeavors. She had not worked outside the home since the marriage, except for duties she assumed at the couple's horse ranch.

One day after Ruth filed for divorce, Rome borrowed $200,000 from Parker Square Bank, pledging community certificates of deposit worth $200,000. He was served with citation three days later. The day after service, he wrote a check on the bank for $30,000 and withdrew $74,000 from a certificate and checking account at another bank. Rome had $230,000 plus of this money still in hand at trial. Later he had all the furniture from the ranch house put into storage and left for Las Vegas, Nevada. He did not tell Ruth about the funds, the furniture, or the fact that he was leaving for Las Vegas. He was gone approximately six weeks. While he was gone, Ruth was appointed community receiver of the community assets, including the leases in question. She was removed as receiver on December 3, 1984. Prior to leaving, Rome told the contract pumper to cease pumping the Holliday leases because of salt water leakage. In September, 1984, Ruth requested the pumper to start pumping the wells again provided it could be done safely. In December, 1984, Rome again requested that the wells be shut down because of salt water problems, and Ruth notified the pumper to do so. Trial on the merits was held April 2, 1985.

Ruth's expert testified at trial that the Holliday leases were worth $100,000. Rome testified that the leases, including equipment, were worth approximately $150,000.

■ Having reviewed all of the testimony, we do not find that the trial court abused its discretion by denying Rome's motion for new trial. The trial court could have reasonably concluded that under these circumstances Rome was in as good a position as Ruth to know that the leases could have terminated due to the cessation of production. In fact, the trial court could have concluded that Rome would know

more about such matters than Ruth and that nothing prevented him from exercising the reasonable diligence required to make a more accurate assessment of the leases' value prior to trial. We overrule point of error number one.

In points of error numbers two, three and four, Rome urges that the trial court abused its discretion by dividing the estate unequally in favor of Ruth, and that there is no evidence or insufficient evidence to support the division.

█ The trial court has wide discretion in dividing the estate of the parties, and that division should be corrected on appeal only when an abuse of discretion has been shown. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981). It is presumed that the trial court exercised its discretion properly. *Id.* at 699. The community property need not be equally divided. *Id.*

█ The trial court, in dividing the property, may take into consideration several factors such as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical condition and obligations, disparity of ages, size of separate estates, and the nature of the property. *Id.* The consideration of a disparity in earning capacities or incomes is proper and need not be limited by "necessitous" circumstances. *Id.*

Rome is in his late 60's. Since the 1970's he has been active in making the family's oil investments. Ruth, who is in her late 40's, has a high school education and has not worked outside the home since their marriage.

Ruth acknowledged having a relationship with another man during the marriage. Although Ruth had not alleged any fault on the part of Rome, there was some testimony concerning his relationships with other women. He testified as follows:

Q. Have you had numerous affairs with women after you were married?

A. As I told you, no; and I'm a gentleman.

Another witness then testified:

Q. Mr. Durbin, have you ever seen Rome Rutledge outside a bar embracing a woman not his wife?

A. Yes.

Q. Where?

A. On Lamar Street, I believe it is.

Q. And was he doing it in a gentlemanly fashion?

A. Yeah.

█ The trial court divided the property as follows:

| Ruth | Values |
| --- | --- |
| Overriding royalty interests | Equal to active leases |
| Iowa Park Ranch | $450,000.00 |
| Personal property from the ranch | 7,871.00 |
| Horses and equipment from the ranch | 81,700.00 |
| Cash | 165,000.00 |
| Miscellaneous personal property | Unknown |
| 1983 El Dorado | 24,000.00 |
| | $728,571.00 |

| Rome | Values |
|---|---|
| Active oil leases | Equal to overriding royalty interests |
| House at 2614 Bretton Road | $125,000.00 |
| Personal property from house on Bretton Road | 12,880.00 |
| Oil field equipment | Unknown |
| Braniff retirement rights | Unknown |
| Two Honda motorcycles | 500.00 |
| Penrod and Crabtree notes | Less than $40,000.00 |
| Two Model A automobiles | 10,000.00 |
| Cessna 310 aircraft | 40,000.00 |
| Glastron jet boat | 10,000.00 |
| Travel trailer | 3,000.00 |
| 1983 silver Ford pickup | 8,000.00 |
| Two-horse trailer | 1,000.00 |
| Cash | 164,500.00 |
| Run checks | 11,298.00 |
| Miscellaneous personal property | Unknown |
| 1984 Cadillac El Dorado | 23,000.00 |
| Cashier's check | 74,000.00 |
| | $483,178.00 |

(total does not include the Penrod and Crabtree notes)

---

We do not find that the trial court abused its discretion in the division of the property. Rome relies on the case of *Erger v. Erger,* 590 S.W.2d 186 (Tex.Civ.App.—Fort Worth 1979, writ dism'd). In that case the court awarded the wife all of the residence, which was the couple's principal asset, and made a relatively equal distribution of the remaining property. This division resulted in the wife receiving a larger share of the property, despite the fact that she had a significantly larger separate estate and had a greater earning capacity than the husband. In the case at bar, there is no evidence that Ruth Rutledge has any significant separate estate. Her husband appears to be capable of doing very well in his oil investments, whereas the evidence showed that Ruth had not worked during the marriage and had no marketable job skills. She testified she had been raised on a farm and felt that she could make money raising horses on the ranch which the trial court awarded to her. We overrule points of error numbers two, three and four.

The judgment is affirmed.