ROME RUTLEDGE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rutledge v. Commissioner
Docket No. 9983-89
United States Tax Court
T.C. Memo 1992-52; 1992 Tax Ct. Memo LEXIS 57; 63 T.C.M. (CCH) 1926; T.C.M. (RIA) 92052; January 28, 1992, Filed *57 Decision will be entered under Rule 155. Charles M. Meadows, Jr. and Kimberly C. Harris, for petitioner. Shelly Turner, for respondent. FAY, Judge. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A. [1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: In his notice of deficiency dated February 14, 1989, respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1985 in the amount of $ 4,918. In an amended answer filed September 5, 1989, respondent sought an increased deficiency in the total amount of $ 36,522.73 and additions to tax as follows: Section 6653(a)(1) in the amount *58 of $ 1,826.14; section 6653(a)(2) in the amount of 50 percent of the interest due on the deficiency; and section 6661(a) in the amount of $ 9,131. Immediately prior to trial, respondent made certain concessions reducing his claimed deficiency and additions to tax. After trial, we granted respondent's motion for leave to conform pleadings to proof wherein respondent again sought to adjust his claim, withdrawing his prior concessions, as the result of facts made available at the trial. According to said motion, respondent seeks a deficiency in the amount of $ 27,713.52 and additions to tax under section 6653(a)(1) in the amount of $ 1,385.68, under section 6653(a)(2) in the amount of 50 percent of the interest due on the deficiency, and under section 6661(a) in the amount of $ 6,928. Petitioner concedes that he received unreported annuity income from Prudential Life Insurance Co. during 1985 in the amount of $ 1,665. The issues for decision are as follows: (1) Whether petitioner received unreported income during 1985. (2) Whether petitioner is liable for self-employment tax. (3) Whether petitioner is liable for additions to tax for negligence and for substantial understatement *59 of income tax. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Archer, Texas, at the time of filing the petition herein. Petitioner was married to Ruth Rutledge in the early 1960's. Petitioner and Ruth Rutledge separated in 1984 and were divorced on April 23, 1985. Sometime prior to 1985, petitioner retired as a pilot for Braniff Airlines. Since his retirement, petitioner has received a pension or annuity (annuity) paid by Prudential Insurance Co. During their marriage, petitioner and Ruth Rutledge owned interests in oil and gas leases on which they received royalty payments. Forest Oil Corp. purchased oil from some of these oil leases and paid royalties to petitioner therefor. During 1985 Forest Oil issued seven checks payable to petitioner, the dates and amounts of which are as follows: Date
Gross Amount [1]
Net Amount 1.
1/2/85
$ 11,963.96
$ 11,034.08 2.
1/31/85
11,826.46
10,958.98 3.
2/28/85
12,303.67
11,390.01 4.
3/29/85
8,096.19
7,510.08 5.
4/30/85
3,432.86
2,883.75 6.
5/31/85
6,689.24
5,888.82 7.
6/28/85
13,023.65
11,741.62 Total
$ 67,336.03
$ 61,407.34 *60 The first four checks were issued to petitioner prior to the divorce, while the latter three were issued afterwards. Distributions from Forest Oil were customarily made on the last day of each month, except December when the distribution was made the following January. Checks were generally mailed on the same day as they were dated. Forest Oil did not place any restrictions on the negotiation of distribution checks. Petitioner and Ruth Rutledge maintained a joint checking account which was used for both personal and business purposes. During their marriage, Ruth Rutledge maintained the books and paid bills related to their oil interests. It was customary for Ruth Rutledge to endorse royalty checks for both herself and petitioner and deposit the checks into the joint checking account. On August 24, 1984, Ruth Rutledge filed for divorce in the County Court of Law, Wichita County, Texas. After August 24, 1984, petitioner and Ruth Rutledge began living separately and no longer communicated. Soon after the divorce action was filed, petitioner withdrew large sums of money from the joint bank account and went to Las Vegas for a few weeks. Ruth Rutledge was unaware of petitioner's *61 whereabouts after the August 24 separation. On August 29, 1984, the County Court, Wichita County, Texas, issued a temporary order pursuant to the request of Ruth Rutledge. She was appointed receiver of the community assets and was authorized to manage community assets, including oil-related business activities. The order also enjoined petitioner from absconding with any community assets and from making any decisions with respect to the community property. After the order was issued, Ruth Rutledge operated the family oil business. She also continued to handle royalty payment checks in the same manner as before. At some point during the divorce proceedings, petitioner provided the U.S. Postal Service with a change of address so that mail addressed to him was no longer delivered to the marital residence. Petitioner experienced some difficulty in the receipt of mail. On December 3, 1984, petitioner filed a motion to dissolve the August 29, 1984, temporary order. On the same date, the court issued a "Judge's Fiat" wherein petitioner was granted a temporary restraining order against Ruth Rutledge until such time as the court could rule on petitioner's motion to dissolve the August *62 29, 1984, order. In an order issued January 3, 1985, acting on a hearing held December 7, 1984, the court dissolved the receivership and modified the temporary restraining order to allow petitioner access to books and records and to allow him access to the joint bank account for expenses incurred in the ordinary course of living and costs and legal expenses in connection with the divorce action. Petitioner continued to be prohibited from participating in the family oil business. A final decree of divorce was entered on April 23, 1985. The decree divided the community property. Ruth Rutledge was awarded the joint checking account and the Forest oil leases and any income therefrom. After the divorce was granted, Ruth Rutledge changed the joint account to a separate account in her name. The judgment of the county court was affirmed on May 15, 1986. Rutledge v. Rutledge, 709 S.W.2d 389 (Tex. Ct. App. 1986). Ruth Rutledge received, endorsed, and deposited to the joint checking account the following three checks issued to petitioner by Forest Oil: Issued
Gross Amount
Net Amount
Deposited 1.
1/2/85
$ 11,963.96
$ 11,034.08
2/29/85 2.
1/31/85
$ 11,826.46
$ 10,958.98
2/26/85 3.
2/28/85
$ 12,303.67
$ 11,390.01
3/29/85 *63 Ruth Rutledge did not inform petitioner of her receipt of these checks. Ruth Rutledge did not receive the following four checks: Issued
Gross Amount
Net Amount 4.
3/29/85
$  8,096.19
$  7,510.08 5.
4/30/85
$  3,432.86
$  2,883.75 6.
5/31/85
$  6,689.24
$  5,888.82 7.
6/28/85
$ 13,023.65
$ 11,741.62 These four checks issued in March, April, May,and June 1985 were received by petitioner sometime in 1985 and cashed by him in October 1986. At some point after the Forest Oil check dated June 28, 1985, was issued, Ruth Rutledge's attorney notified Forest Oil to suspend issuance of checks to petitioner. Pursuant to this notification, Forest Oil stopped issuing royalty checks to petitioner after June 1985. During his marriage to Ruth Rutledge, petitioner also acquired an interest in oil and gas wells which sold oil to Pride Pipeline (Pride) during 1985. On March 20, 1985, Pride issued a check in petitioner's name in the net amount of $ 9,507.96 (check No. 8). [2] Petitioner received the check sometime in 1985 and cashed the check in October 1986. Pride generally issued checks on the 10th of the month for the previous month's production if requirements were met *64 by the owner. Any money held in suspense was generally released on the 25th of the month. Pride did not place any restrictions on the cashing of the check after its issuance. Tax Return Information
Accountant Terry Hobbs prepared petitioner's and Ruth Rutledge's 1985 individually filed Federal income tax returns. Hobbs also prepared the 1984 joint return of petitioner and Ruth Rutledge. Hobbs prepared the 1985 income tax returns based on information provided by petitioner and Ruth Rutledge, respectively. Petitioner did not provide Hobbs with any documents relating to income from his Braniff annuity or documents relating to royalty payments from Forest Oil or Pride. The only documents relating to income for 1985 furnished by petitioner to Hobbs were copies of five statements from Texaco, Inc. Petitioner and Ruth Rutledge did not communicate *65 with each other concerning their returns nor did they have an opportunity to review each other's 1985 return prior to the filing thereof. Petitioner did not compare his 1985 individual return with his 1984 joint return to verify its accuracy. Petitioner did not report any annuity income from Braniff on his 1985 return, although he did report annuity income on his 1984 return. Petitioner also did not report any amounts relating to the seven disputed checks from Forest Oil nor did he report any amount relating to royalties paid by Pride. Petitioner reported interest income and Schedule C net income relating to other gas and oil activities. Hobbs attached to the 1985 return a statement that the return was prepared using available records. This statement was provided at petitioner's request. On her individually filed 1985 Federal income tax return, Ruth Rutledge reported as income (among other items) the following two checks from Forest Oil: Date
Gross Amount 2.
1/31/85
$ 11,826.46 3.
2/28/85
$ 12,303.67 Her records did not include the stub for check No. 1 from Forest Oil dated January 2, 1985, and, consequently, Ruth Rutledge failed to include the amount of that *66 check in her income for 1985. Ruth Rutledge also reported income from oil interests on Schedule E and expenses from oil interests on Schedule C. Hobbs also prepared petitioner's individually filed 1986 income tax return. Petitioner did not report as income on the 1986 return the four checks issued by Forest Oil in March, April, May, and June of 1985 (checks 4 through 7) which petitioner cashed in 1986. Position of the Parties
Respondent's position is that the seven Forest Oil checks and the one Pride check represent income to petitioner in 1985. The theories and amounts of inclusion fall into three categories: 1. Respondent argues that check Nos. 1 through 3 received by Ruth Rutledge from Forest Oil are community property income; thus one-half the gross amounts are taxable to petitioner. Respondent argues that petitioner and Ruth Rutledge were still married at the time these funds were received and that petitioner had access to the joint bank account to which the funds were deposited by Ruth Rutledge. 2. In the second category is check No. 4 (from Forest Oil) and check No. 8 (from Pride). Respondent argues that while these checks were issued prior to the April 23, *67 1985, divorce and would normally be subject to a community property split, petitioner received the two checks in 1985, improperly withheld them from Ruth Rutledge, and cashed them in 1986. Respondent thus argues that, since there were no restrictions on the negotiation of those checks, the entire amount of the checks is taxable to petitioner in 1985. Respondent relies upon section 66(b) and (c). 3. The third category relates to check Nos. 5 through 7 (issued by Forest Oil). Respondent argues that these checks were issued subsequent to the April divorce, and therefore are not community property. Respondent further argues that although petitioner was not entitled to these funds (the divorce decree awarded the property generating the income to Ruth Rutledge), petitioner received the checks in 1985 and cashed them in 1986. Respondent concludes that petitioner wrongfully retained and cashed these checks and thus the full amounts are taxable to him in 1985. In addition to the above, respondent argues that petitioner is subject to self-employment tax to the extent he is taxed on any of the above-noted funds. Respondent further argues that petitioner is subject to additions to tax *68 for negligence and for substantial understatement of income tax. Petitioner points out initially that respondent has the burden of proof with respect to the claim for an increased deficiency. The only adjustments set forth in the notice of deficiency were the inclusion of $ 6,733.60 from Forest Oil and $ 9,967 from Pride. Considering the three categories outlined by respondent above, petitioner argues as follows: 1. Check Nos. 1 through 3 were received by Ruth Rutledge and treated by her as her own funds. Petitioner notes that Ruth Rutledge reported two of the three checks on her return and testified that she would have reported the third check had her records been complete. As a result, petitioner argues that no portion of these checks should be taxed to him. 2. and 3. With respect to check Nos. 4 through 7 from Forest Oil, petitioner argues that respondent failed to establish that petitioner received the funds in 1985. Petitioner further argues that even if it is established that petitioner received the funds, the checks were subject to restrictions imposed by the County Court, Wichita County, Texas, and therefore not taxable to petitioner. Petitioner does not present *69 a specific argument with respect to check No. 8 from Pride. With respect to the self-employment tax, petitioner argues that, assuming some portion of the proceeds is taxable to him, he was not engaged in a trade or business such as to be subject to self-employment tax. Petitioner points out that he was prohibited from operating the oil business during and after the divorce proceeding. He further argues that any amounts received were similar to dividends and interest and not subject to self-employment tax. As a final matter, petitioner argues that he is not liable for the additions to tax. OPINION 1. Burden of Proof
The parties appear to agree that, at some point between the examination of the return and the issuance of the notice of deficiency, respondent's agents made an error. Whereas respondent's examination report included $ 67,336 as omitted income from Forest Oil, the notice of deficiency included only $ 6,733.60. Respondent made a claim for the additional amount in his amended answer filed September 5, 1989. Immediately prior to trial, petitioner filed a motion to determine the burden of proof, arguing that the burden should be on respondent to the extent of *70 any claim for an increased deficiency. Respondent initially opposed the motion. The Court advised the parties that it appeared that the burden was on respondent to the extent of the claim for an increased deficiency. Nevertheless, the Court took the motion under advisement, suggesting to respondent that he could present argument on brief. In his brief, respondent conceded this issue. Thus, respondent has the burden of proof with respect to his claim of omitted income from Forest Oil over and above $ 6,733.60. Rule 142(a); McSpadden v. Commissioner, 50 T.C. 478, 492-493 (1968). Also, respondent has the burden of proof with respect to the increased self-employment tax and the additions to tax for negligence and substantial understatement of income tax claimed in his amended answer. 2. Omitted Income
The parties do not dispute that the seven Forest Oil checks and the one Pride check represent income. The only question is whether the checks represent income to petitioner or to Ruth Rutledge. For convenience, we will consider the checks in the three categories in respondent's argument. Check Nos. 1 Through 3 From Forest Oil
Ruth Rutledge received *71 three checks from Forest Oil after her separation from petitioner but before the final order of divorce. The checks were dated January 2, January 31, and February 28, 1985. Petitioner was named as the payee and the gross amount of the three checks was $ 36,094.09. [3] Ruth Rutledge endorsed the checks with petitioner's name and deposited them in the joint bank account to which petitioner had access. Ruth Rutledge reported two of the three checks, totaling $ 24,130.13, on her 1985 individual Federal income tax return. Respondent claims that the checks represent community income and one-half the gross amount of the checks, $ 18,047.05, should be considered income to petitioner. Texas is a community property State. Tex. Fam. Code Ann. sec. 5.01 (West 1975); Lange v. Phinney, 507 F.2d 1000, 1005 (5th Cir. 1975). A spouse residing in a community property State is liable for the Federal income tax on one-half the community property share realized *72 during the existence of the community. United States v. Mitchell, 403 U.S. 190 (1971). Neither party here argues that the community terminated under Texas law prior to the April 23, 1985, divorce. [4] The Texas Family Code presumes that all property possessed by either spouse at the time of dissolution is community property. Tex. Fam. Code Ann. sec. 5.02 (West 1975). Thus, check Nos. 1 through 3 are community property and one-half the gross amount shall be considered income to petitioner unless some other provision operates to exclude such income. In this regard, petitioner argues that he qualifies under section 66(a), (b), or (c) so that a portion of the proceeds of the three checks should not be considered income to him. We first look *73 to see if petitioner qualifies under section 66(a). That section provides as follows: Sec. 66(a). Treatment of Community Income Where Spouses Live Apart. -- If -- (1) 2 individuals are married to each other at any time during a calendar year; (2) such individuals -- (A) live apart at all times during the calendar year; and (B) do not file a joint return under section 6013 with each other for a taxable year beginning or ending in the calendar year; (3) one or both of such individuals have earned income for the calendar year which is community income; and (4) no portion of such earned income is transferred (directly or indirectly) between such individuals before the close of the calendar year, then, for purposes of this title, any community income of such individuals for the calendar year shall be treated in accordance with the rules provided by section 879(a).
We normally will not look beyond the clear language utilized by Congress in drafting a statutory provision. Harrison v. Northern Trust Co., 317 U.S. 476 (1943); United States v. American Trucking Associations, Inc., 310 U.S. 534 (1940); Tele-Communications Inc. v. Commissioner, 95 T.C. 495, 506 (1990); *74 Centel Communications Co. v. Commissioner, 92 T.C. 612 (1989); Latrobe Steel Co. v. Commissioner, 62 T.C. 456 (1974). Although we see nothing ambiguous in the quoted language, respondent refers us to legislative history which he argues would appear to add a "knowledge" requirement to the terms of section 66(a). Fueled by the history which he cites, respondent argues that section 66(a) does not apply to petitioner because petitioner knew or had reason to know of the omitted community income. We reject respondent's interpretation of section 66(a). Respondent has erroneously referred us to H. Rept. 98-432, at 200-202 (1984), which addresses section 66(c). That subsection was added later than subsection (a), by the Deficit Reduction Act of 1984, Pub. L. 98-369, section 424(b)(1), 98 Stat. 802, to extend the protections of innocent spouse status to certain community property situations. As is apparent from a reading of the statute, section 66(c) does contain a "lack of knowledge" requirement similar to the one found in section 6013(e). S. Rept. 96-1036, 1980-2 C.B. 723, accompanying the Miscellaneous Revenue Act of 1980, Pub. *75 L. 96-605, section 101(a), 94 Stat. 3521, which added section 66 (including current subsection (a)), does not contain any indication that Congress intended to predicate the application of subsection (a) on a lack of knowledge concerning the community income. [5]
Since we here reject respondent's position and otherwise find the language of the statute to be clear, we will proceed to apply the terms of section 66(a) to petitioner. Respondent does not appear to dispute that petitioner satisfies paragraphs (1) through (3) of section 66(a). In addition to his "knowledge" argument, which we have indicated does not apply, respondent argues that funds were transferred to petitioner (at least in part) by having been deposited to the joint account. [6] Sec. 66(a)(4). *76 Respondent cites Lucia v. Commissioner, T.C. Memo. 1991-77, as his authority.
In Lucia v. Commissioner, supra, we held that section 66(a) was inapplicable because the taxpayer did not live apart from her spouse at any time during the taxable year at issue. We then determined that subsection (c) did not apply because the taxpayer knew or had reason to know about the omitted income. Relevant to this conclusion was our finding that the taxpayer participated in certain business enterprises and was a joint signatory on certain bank accounts. We concluded that the taxpayer knew of facts giving rise to the omission of income and therefore did not qualify under section 66(c). Respondent's analogy is erroneous. The ruling in Lucia v. Commissioner, supra, was based in part on knowledge of a joint bank account under *77 a statute having knowledge as an element, i.e., section 66(c). Certainly, petitioner had knowledge of the joint account which was utilized in regular course by Ruth Rutledge, but the issue here is not petitioner's knowledge of the account. Rather, the issue is whether a "transfer" occurred between Ruth Rutledge and petitioner as a result of the deposit of funds into the account. We do not believe that there was a "transfer" of funds as described in section 66(a)(4). While funds were deposited to a joint bank account by Ruth Rutledge, the record reflects that Ruth Rutledge had control over the account. There is no evidence that petitioner had any involvement with the joint account in 1985, nor that he made any withdrawals from the account during 1985. Petitioner and Ruth Rutledge did not communicate during this period and, given petitioner's withdrawal of large sums of money from their joint properties soon after the separation, it seems very unlikely that Ruth Rutledge intended for petitioner to receive any funds deposited by her to the joint account in 1985. In fact, Ruth Rutledge obtained a court order prohibiting petitioner's access to joint funds. Although this order *78 was subsequently modified, there is no allegation or suggestion that petitioner received any amounts deposited to the joint account by Ruth Rutledge. Respondent does not argue, nor is there other evidence of, the transfer of earned income between petitioner and Ruth Rutledge in 1985; thus, the provisions of section 66(a)(4) have been met. Accordingly, we are satisfied that petitioner meets all four tests of section 66(a) and that section 66(a) applies to determine the taxation of check Nos. 1 through 3. The concluding language of section 66(a) makes reference to section 879(a) for the treatment of the community income. Section 879(a)(1) through (3), respectively, provides specific treatment for (1) earned income, (2) trade or business income, and (3) community income derived from separate property of one spouse. Section 879(a)(4) provides that all other community income not referred to in section 879(a)(1) through (3) shall be treated according to applicable community property law. We must thus decide whether the income from Forest Oil comes within section 879(a)(1) through (3) or paragraph (4). If the income does not fit within section 879(a)(1) through (3), it will be treated *79 as community income in any event pursuant to paragraph (4). The parties have not discussed this issue in the context of section 66(a) or section 879; however, there is some discussion as to whether petitioner was in the trade or business of leasing or selling oil interests for the purpose of the self-employment tax under section 1401. Respondent argues that petitioner was in the oil business and thus self-employment tax should be imposed against petitioner on any income from Forest Oil or Pride. In applying section 879(a), therefore, we view the parties' dispute as one involving the applicability of section 879(a)(2). Accordingly, we need to consider whether Ruth Rutledge (not petitioner) was in the oil business since it is petitioner who seeks the benefits of section 879(a). In this regard, the parties' discussion of the section 1401 issue as to petitioner is helpful with respect to our determination here. Our resolution of whether petitioner was in the oil business during 1985 is instructive in determining whether Ruth Rutledge was in the trade or business of oil and gas. Section 1401 imposes a self-employment tax. Subject to a number of exclusions and exceptions, "self-employment *80 income" is defined generally in section 1402 as net income other than wages from a "trade or business" as that term is used in section 162. Sec. 1402(a), (c), and (d); sec. 1.1402, Income Tax Regs. See generally Gentile v. Commissioner, 65 T.C. 1 (1975). [7] As authority for the proposition that petitioner was engaged in the oil business, respondent cites the proceeding in the State divorce case between petitioner and Ruth Rutledge. Rutledge v. Rutledge, 709 S.W.2d 389 (Tex. Ct. App. 1986). In his brief, respondent suggests that petitioner is collaterally estopped from denying certain alleged findings of the matrimonial proceeding. Respondent has the burden of proof (at least to the extent he seeks to tax distributions from Forest Oil in excess of $ 6,733.60). Although he intimates that petitioner is estopped from denying that he is in the oil and gas business, respondent did not raise the issue *81 of collateral estoppel in any of his pleadings. Consequently, we need not, and do not, decide it here. Rule 39; Fahey v. Commissioner, T.C. Memo. 1979-20. On this record, we do not find that petitioner was in the trade or business with respect to Forest Oil. The testimony of petitioner and Ruth Rutledge was consistent that Ruth Rutledge managed the operation of the oil business after the August 1984 court order. Thus, after August 1984, petitioner no longer had any involvement with Forest Oil. On the other hand, Ruth Rutledge's responsibility with respect to Forest Oil substantially increased after August 1984 as she became solely responsible for the operation of the interests. Ruth Rutledge was ultimately awarded the interest in Forest Oil. On her 1985 individually filed return, Ruth Rutledge reported income from oil interests on Schedule E and expenses from oil interests in Schedule C. While there is no evidence in this record that petitioner should be treated as being in the trade or business of conducting oil activities in 1985, there is such evidence that Ruth Rutledge engaged in this activity during petitioner's absence and during his prohibition *82 from operation of the business. Based on our conclusion that section 879(a)(2) applies, we need not consider the application of section 879(a)(1) or (3). In light of the above, we find the community income represented by check Nos. 1 through 3 constitutes trade or business income attributable to Ruth Rutledge. Consequently, it is taxable to Ruth Rutledge pursuant to sections 66(a), 879(a)(2), and 1402(a)(5). We need not determine whether section 66(b) or (c) applies to these payments as suggested by the parties. [8]
*83 Check No. 4 From Forest Oil and Check No. 8 From Pride
The gross amount of these checks totals $ 18,063.41 and the net amount totals $ 17,018.04. Both of these checks were issued prior to the April 24, 1985, divorce and were cashed by petitioner in October 1986. Respondent argues that while the funds are subject to community property law, section 66(b) would require the entire amount to be considered income to petitioner. In the alternative, respondent argues that Ruth Rutledge qualifies for relief under section 66(c); therefore, all the income should be taxable to petitioner. Petitioner initially argues that respondent failed to establish that he received the checks in 1985. Petitioner further argues that if he did receive the checks, they do not represent income to him since restrictions were placed on them by court order and he did not cash them until 1986. We are satisfied, based on this record, that petitioner received both check No. 4 and check No. 8 in 1985. While not included in this category, we are likewise satisfied that petitioner received the remainder of the checks from Forest Oil (check Nos. 5 through 7) in 1985. The parties agree that the checks involved *84 were mailed in 1985 on the date of their respective issuance. The parties also agree that the checks were not sent to or received by Ruth Rutledge. Petitioner did not testify that he did not receive the checks, but rather argued that respondent failed to establish that he did receive them. Although respondent has the burden of proof with respect to the additional amounts claimed in his amended answer, petitioner was in the best position to enlighten the Court concerning the circumstances surrounding receipt of the checks. If petitioner did not receive the checks in 1985, we would expect him to testify to this effect or otherwise to present supporting evidence as to how the checks came into his possession. Petitioner testified only that he found the checks in 1986 in a box among his belongings and that they were cashed by him in October 1986. We are satisfied that petitioner received the checks soon after they were issued in 1985. Having determined that the checks were received by petitioner in 1985, the next issue is whether check Nos. 4 and 8 (as well as the remaining three checks from Forest Oil, Nos. 5-7) were subject to restrictions so as to be nontaxable to petitioner *85 in 1985. Petitioner is a cash basis taxpayer and, as such, is required to report income in the year of receipt. Secs. 451(a), 446(b); sec. 1.446-1(c)(1)(i), Income Tax Regs. Income received in the form of a check is reportable in the year of receipt if it is available for the taxpayer's unrestricted use and is honored by the drawee upon presentment, even if the check is not negotiated until a later tax year. Spiegel v. Commissioner, 12 T.C. 524, 529 (1949). Petitioner argues that the temporary orders and divorce decree restricted his rights to the checks and that, assuming he received the checks in 1985, he held them for the benefit of Ruth Rutledge. We do not agree with petitioner. No restrictions were placed on the checks by the payors. While temporary orders and ultimately a final order of divorce restricted petitioner's rights to the funds, petitioner apparently ignored such restrictions. Petitioner was no more entitled to cash those checks after the final decree of divorce than he was during the divorce proceedings when the temporary orders were in effect. Petitioner did not adequately explain the circumstances of his receipt and retention of *86 the checks. His unsupported claim that he held the checks in trust for Ruth Rutledge is inconsistent with his claim that he "found" the checks in a box among his belongings. Petitioner's argument also would require us to conclude that, at some point in 1986, petitioner violated the purported trust arrangement by cashing the checks and retaining the proceeds. Although petitioner cites cases to support his "restriction" and "constructive trust" arguments, they are inapplicable. The cases referred to by petitioner involved an agreement or understanding by the taxpayer that the funds were held as a conduit or restrictions on negotiation of the checks were imposed by the payor. Neither of these situations is present here. We find that petitioner received the checks in 1985 and failed to turn them over to Ruth Rutledge as required by the court orders. Finally, petitioner makes a claim of right argument that he should not be taxed on the checks in 1985. Usually, this argument is employed by respondent to require inclusion of an amount in a taxpayer's taxable income. Under the claim of right doctrine, if a taxpayer receives income under a claim of right and without restrictions, the *87 income is taxable in the year received, even though it may be claimed that he is not entitled to retain the funds and he may be adjudged liable to restore its equivalent. Corliss v. Bowers, 281 U.S. 376, 378 (1930); Monroe Abstract Co. v. Commissioner, 41 B.T.A. 5, 9 (1940). The doctrine has been employed in a defensive manner, as petitioner would here, to find that amounts received by a telephone company as a result of increased charges were not taxable in the year of receipt because of restrictions imposed by a Government agency. Mutual Telephone Co. v. United States, 204 F.2d 160, 161 (9th Cir. 1953). This argument does not assist petitioner. The fact that petitioner did not have a "claim of right" to the checks does not make them "nontaxable" to him. Petitioner treated the checks as his own and whether he was legally entitled to do so is irrelevant for purposes of treating them as income. To the extent he may have been entitled to part or all of the proceeds of check Nos. 4 and 8, petitioner received and retained the proceeds and they are taxable to him. To the extent he was not entitled to the checks, petitioner *88 misappropriated these funds and such funds are still taxable to him. James v. United States, 366 U.S. 213 (1961); McSpadden v. Commissioner, 50 T.C. 478 (1968). Having determined that check Nos. 4 and 8 are taxable to petitioner, we now consider whether they are subject to the community property split. Section 66(b) provides as follows: (b) Secretary May Disregard Community Property Laws Where Spouse Not Notified of Community Income. -- The Secretary may disallow the benefits of any community property law to any taxpayer with respect to any income if such taxpayer acted as if solely entitled to such income and failed to notify the taxpayer's spouse before the due date (including extensions) for filing the return for the taxable year in which the income was derived of the nature and amount of such income.
As we previously indicated, section 66(b) is not a relief provision but rather permits respondent to disallow the benefits of community property law. Here, petitioner retained the two checks, ultimately cashed them, and did not notify Ruth Rutledge of the nature and amount of such income before filing the 1985 return. We are satisfied *89 that petitioner should not be entitled to the benefits of the community property law with respect to check No. 4 from Forest Oil and check No. 8 from Pride. Williams v. Commissioner, T.C. Memo. 1991-521. Thus, the total of these two checks represents income to petitioner. Since we find that section 66(b) applies to these two checks, we need not consider respondent's alternative argument under section 66(c). Check Nos. 5 Through 7 From Forest Oil
These three checks were issued subsequent to the April 24, 1985, final decree of divorce. The gross amount of these checks totals $ 24,145.75 and the net amount totals $ 20,514.19. Respondent argues that the checks were not subject to community property law and, thus, the entire amount of the checks should be considered income to petitioner in 1985, the year of receipt. Petitioner takes the same position that he argued with respect to the category 2 checks -- that he did not receive the checks, and if he did, that they are not income in 1985 since they were subject to restrictions. As previously indicated, we are satisfied that petitioner received the checks in 1985. We further find that petitioner did not *90 hold the checks in trust for Ruth Rutledge, but that he retained the checks and for some unexplained reason did not cash them until October 1986. Therefore, the proceeds of these three checks represent income to petitioner. Petitioner does not contest, nor is there any doubt, that these funds are not subject to community property law since the checks were issued and received subsequent to the final order of divorce. The Forest Oil property was in fact awarded to Ruth Rutledge. Petitioner should have turned the checks over to his former spouse, but rather he kept the checks, ultimately cashed them, and retained the proceeds. Thus, the total of the three checks represent income to petitioner. 3. Self-Employment Tax
We have fully discussed this issue with respect to the second category of checks and for the reasons set forth therein we hold that petitioner is not liable for the increased self-employment tax claimed in the amended answer. 4. Additions to Tax
In his amended answer, respondent asserted additions to tax under section 6653(a)(1) and (2) for negligence, and under section 6661(a) for substantial understatement of income tax. Negligence is defined as *91 the lack of due care or failure to do what an ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Based upon this record, we hold that petitioner is liable for the addition to tax for negligence. Petitioner failed to report sizable amounts of income from the gas and oil interests. Even if he had a belief that he was holding royalty checks in trust for his wife, we find that belief to be unreasonable in the absence of any evidence of such an agreement. Petitioner's relationship with Ruth Rutledge had deteriorated to hostility by 1985 and we believe that petitioner more likely intended to permanently deprive Ruth Rutledge of those funds. Petitioner also claimed that the checks constituted income to him in 1986 when he cashed the checks. However, this position is not supported by his 1986 return, since petitioner did not include the amounts of the checks in his income. Finally, petitioner did not adequately explain his failure to report annuity income from Prudential Life. He failed to provide his tax preparer with relevant information and documents concerning these items of income. For these reasons, *92 we conclude that petitioner is liable for the additions to tax for negligence under sections 6653(a)(1) and (2). Respondent also determined that petitioner is liable for the addition to tax for substantial understatement of income tax computed under section 6661(a). As in effect for additions assessed after October 21, 1986, section 6661(a) provides for an addition to tax in the amount of 25 percent of the amount of any underpayment attributable to a substantial understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 501 (1988). "Substantial understatement" is defined as an understatement which exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1). "Understatement" is defined as the amount of the tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return. Sec. 6661(b)(2)(A). The amount of understatement may be reduced where there is substantial authority for the taxpayer's treatment of an item, or where relevant facts relating to the item are disclosed in the return or on a statement attached to the return. *93 Sec. 6661(b)(2)(B). Section 6661 was effective for 1985 Federal income tax returns and petitioner has not established that he is entitled to a reduction of the understatement because of substantial authority or disclosure. Accordingly, assuming that the computations hereunder disclose a substantial understatement as defined in section 6661(b)(1), we hold that petitioner is liable for the addition to tax under section 6661(a). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Petitioner does not appear to challenge that the gross amount of these checks is subject to tax.↩
2. For convenience and clarity, further references herein to the Forest Oil or Pride checks will be made to the numbers assigned here and in the preceding charts.↩
3. The net amount of the checks was $ 33,383.07.↩
4. Cf. Abrams v. Commissioner, T.C. Memo. 1989-462↩, where we held that the community of marriage was dissolved as the result of issuance of Orders by the Texas court revealing an intent of the parties to permanently separate in all respects.
5. The report makes reference to transfers of de minimis amounts as not defeating the applicability of subsec. (a) and an expectation that the Commissioner will issue guidance with respect to such an exception. To date, no regulations have been issued under sec. 66.↩
6. Given the amounts of community income involved here, it is clear that any de minimis exception intended by Congress is inapplicable.↩
7. See also Oller v. Commissioner, T.C. Memo. 1981-124↩.
8. We note, however, that the parties have misconstrued sec. 66(b). Petitioner argues that he qualifies for relief under sec. 66(b). Sec. 66(b) permits the Secretary to disallow the benefits of community property law under prescribed conditions. The Secretary has not sought to disallow any benefit of community property law with respect to this income. Rather, respondent argues in his brief that the community property laws should apply↩, although he then attempts to explain why petitioner does not qualify for relief under sec. 66(b). Since sec. 66(b) is not a relief provision, these arguments are misdirected.